Barry D. THURMAN, Appellant,

v.

Kayla R. THURMAN, Appellee.

No. 33A01–0205–CV–177.

Court of Appeals of Indiana.

Oct. 22, 2002.

R. Scott Hayes, Natalie M. Snyder, Hayes Copenhaver Crider, New Castle, IN, Attorneys for Appellant.

## OPINION

SULLIVAN, Judge.

Appellant, Barry D. Thurman ("Father"), appeals from the order of the trial

court upon his petition to modify visitation and child support. Father presents three issues, which we restate as:

I. Whether the trial court erroneously admitted evidence regarding Father's child support arrearage;

II. Whether the trial court violated the statute of limitations in calculating Father's child support arrearage; and

III. Whether the trial court erred in not abating portions of Father's child support.

We affirm in part, reverse in part, and remand.

The record reveals that Father was divorced from Kayla R. Thurman ("Mother") on February 9, 1990. At the time of the dissolution, Mother and Father had two minor children, S.T. and A.T. Pursuant to the original decree of dissolution, Father was to pay $143 per week in child support. On June 28, 1991, the trial court found that Father owed an arrearage of $325. Father's support payments remained at $143 per week until September 13, 1991, when his obligation was reduced to $110 until November of 1999. On November 19, 1999, the trial court increased Father's payments to $182 per week for a period of six weeks, after which the amount increased to $255 per week.

On January 5, 2001, Father filed a petition to modify custody and child support. A hearing on this petition was held on May 3, 2001. At this hearing, Mother made arguments and asked questions regarding Father's lack of payment of his child support and the resulting arrearage. Father objected to several of these questions. Mother also attempted to introduce into evidence a worksheet prepared by her together with records from the court clerk's office showing the amount of Father's arrearage. Father objected to the introduction of this evidence. The court overruled Father's objection and indicated that it would grant the parties further time to respond to the arrearage issue.

On January 29, 2002, the trial court issued an order wherein it found Father to be in arrears on his child support payments in the amount of $4,986. The trial court ordered Father to pay a total of $225 per week, with $33 per week going toward the arrearage. Regarding visitation, the trial court determined that the parties should follow the Indiana Parenting Time Guidelines.

Father filed a petition to submit omitted evidence and/or motion to correct error on February 26, 2002. The trial court failed to respond to this motion, which was therefore deemed denied on April 12, 2002. *See* Ind. Trial Rule 53.3. Father filed a notice of appeal on May 8, 2002.

### Standard of Review

Generally, decisions regarding child support are left to the sound discretion of the trial court. *Thacker v. Thacker,* 710 N.E.2d 942, 944 (Ind.Ct.App.1999). We will not disturb a trial court's order modifying child support absent an abuse of discretion or a determination that is contrary to law. *Id.* We also note that Mother has failed to file an appellee's brief. In such a case, we need not undertake the burden of developing arguments for the appellee. *Railing v. Hawkins,* 746 N.E.2d 980, 982 (Ind.Ct.App.2001). Applying a less stringent standard of review, we may reverse the trial court when the appellant establishes prima facie error. *Id.* In this sense, prima facie means at first sight, on first appearance, or on the face of it. *Id.*

I

### Notice of Arrearage Issue

■ Father claims that the trial court erred when it allowed Mother to introduce

evidence regarding the amount of child support arrearages he owed. The admission of evidence is entrusted to the sound discretion of the trial court. *Potts v. Williams,* 746 N.E.2d 1000, 1007 (Ind.Ct. App.2001). An abuse of discretion is found where the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

Father claims that neither he nor his counsel were prepared to address the issue of any arrearage. Father argues that he had no notice that the issue of his arrearage might come up at the hearing on his motion to reduce his child support payments and that the trial court violated his right to due process when it heard evidence regarding the arrearage issue. In support of his position, Father relies upon Indiana Code § 34–47–3–5 (Burns Code Ed. Repl.1998), which sets forth the notice requirements for one charged with indirect contempt. In the present case, however, there was no contempt petition filed, nor does the record reveal that Father was ever held in contempt. Therefore, the statute is inapplicable.

Our research reveals that in the case of *Bagal v. Bagal,* 452 N.E.2d 1070, 1072–73 (Ind.Ct.App.1983), it was held that an arrearage judgment rendered by the trial court violated the father's due process rights when the trial court entered the mother's tendered judgment and abstract of payments without prior notice to the father and without giving the father an opportunity to be heard. *Bagal,* however, is distinguishable from the present case. In *Bagal,* the mother filed a petition for a contempt citation against the father, and the trial court had indicated that it would hold further hearings on the issue of the amount owed by the father, but failed to do so. Here, Mother did not petition to have Father held in contempt for failure to pay support. It was Father who filed the motion to reduce his support payments. Moreover, unlike the father in *Bagal,* Father was given an opportunity to be heard, and the trial court granted the parties additional time to submit arguments regarding the arrearage issue.[1]

■ Father seems to argue that the only proper way to determine if there is an arrearage is through a contempt citation. To be sure, a contempt citation is one means of determining an arrearage. *See Pettit v. Pettit,* 626 N.E.2d 444 (Ind.1993) (noting that, in Indiana, child support obligations have long been enforceable by contempt). However, such is not the only appropriate way to enforce child support obligations. *See* Ind.Code § 31–16–12–1 (Burns Code Ed. Supp.2002) (listing means available to enforce child support orders); Ind.Code §§ 31–16–2–1 through 31–16–2–8 (Burns Code Ed. Repl.1997) (governing actions for child support); *Kuhn v. Kuhn,* 273 Ind. 67, 402 N.E.2d 989 (1980) (plaintiff filed suit against ex-husband seeking judgment for accrued child support with no mention of contempt); *Haton v. Haton,* 672 N.E.2d 962 (Ind.Ct.App.1996) (dealing with a petition to determine and reduce delinquent child support to judgment with no mention of contempt), *trans. denied.*

We conclude that, if a party petitions the trial court to modify a child support order, the entire issue of child support, including arrearages, may be heard without unfair surprise to the party seeking the modification. Father should have been aware that all issues relevant to his support payments, including any arrearage, might be brought before the trial court upon his motion. *Cf. Tatum v. Tatum,* 773 N.E.2d 371 (Ind.Ct. App.2002) (issue of modification of child

---

1. Indeed, when asked if ten days would be sufficient additional time to submit arguments regarding the arrearage, Father's trial counsel indicated in the affirmative.

support was properly before the trial court although neither party requested a partial reduction in support where father petitioned for termination of support); *In re Marriage of Johnson*, 625 N.E.2d 1331 (Ind.Ct.App.1993) (where mother in her petition requested "all other relief," trial court had power to award back child support even though mother did not specifically request to recover delinquent support in her petition); *Huffman v. Huffman*, 623 N.E.2d 445 (Ind.Ct.App.1993) (issue of visitation was properly before trial court and mother had notice that a change in visitation might result upon Father's petition to modify custody because visitation is inextricably linked to custody and a change in custody will often necessitate a change in visitation), *trans. denied; O'Campo v. O'Campo*, 597 N.E.2d 1314 (Ind.Ct.App. 1992) (recognizing that, under limited circumstances, modification of support is permissible even in the absence of a petition therefor).

Here, the issue of child support arrearage was linked with the issue of Father's petition to reduce his child support payments. Indeed, this issue is but a part of the broader issue of child support. Father knew that he was behind in his support payments and petitioned to reduce his support payments. Therefore, we cannot say that he was unfairly surprised when Mother introduced evidence as to the amount of his arrearage. Father has failed to demonstrate prima facie error in the trial court's admission of evidence regarding his child support arrearage.

## II

### *Statute of Limitations*

■ Father claims that the trial court erred when it included in its calculation of arrearage delinquent child support for which the applicable statute of limitations had expired. Father cites *Kuhn*, which held that the general statute of limitations, Ind.Code § 34–1–2–3, now found at Ind. Code § 34–11–1–2, was applicable to actions to recover accrued, court-ordered child support payments. 273 Ind. at 72, 402 N.E.2d at 991. This statute states that, "[a] cause of action that . . . arises on or after September 1, 1982[,] and . . . is not limited by any other statute[,] . . . must be brought within ten (10) years." I.C. § 34–11–1–2 (Burns Code Ed. Repl. 1998). Father also cites *Haton*, which followed *Kuhn*, and applied the general statute of limitations to an action to recover accrued court-ordered child support. 672 N.E.2d at 963. The Court in *Kuhn* held that the statute of limitations begins to run on each installment of child support as it becomes due and unpaid. 273 Ind. at 72, 402 N.E.2d at 991. Applying the rule of these cases, Father claims that the trial court improperly included in its arrearage calculation payments which had become due and unpaid more than ten years ago.

We note, however, that on May 8, 1995, Ind.Code § 34–1–2–1.6 was enacted and given emergency effect. *See Connell v. Welty*, 725 N.E.2d 502, 506 (Ind.Ct.App. 2000). This section has since been recodified at Ind.Code § 34–11–2–10 (Burns. Code Ed. Repl.1998), and states:

"An action to enforce a child support obligation must be commenced not later than ten (10) years after:

(1) the eighteenth birthday of the child; or

(2) the emancipation of the child; whichever occurs first."

Thus, a more specific statute of limitations has been enacted to cover actions to enforce child support obligations.

■ Two general rules apply with respect to the enactment of a new statute of limitations: (1) the period of limitation in effect at the time the suit is brought gov-

erns in an action even though it may lengthen or shorten an earlier period of limitation; (2) however, a new statute of limitations cannot revive a claim which was foregone under the prior statute of limitations before passage of the new one. *Connell*, 725 N.E.2d at 506.

In the present case, Father's oldest child support obligations became due and unpaid in 1990. However, prior to the expiration of the then-applicable general statute of limitations, our General Assembly enacted what is now I.C. § 34–11–2–10, which specifically governs actions to recover delinquent child support obligations. Therefore, according to the rule set forth above, I.C. § 34–11–2–10 applies to the present case whether it lengthens or shortens the earlier applicable period. Pursuant to I.C. § 34–11–2–10, any action to enforce a child support obligation must be commenced not later than ten years after the eighteenth birthday or the emancipation of the child who is the object of the support order, whichever occurs first. Here, at the time of the hearing, S.T. and A.T. were fourteen and twelve years old respectively, and there is no suggestion that either child has been emancipated. Therefore, the ten-year period set forth in I.C. § 34–11–2–10 has not even begun to run in the present case, and the trial court did not therefore err in calculating Father's child support arrearage.

### III

### *Abatement of Child Support*

█ Father claims that the trial court erred when it failed to abate his child support payments during periods of extended visitation. As set forth in the decree of dissolution, Father was to have no less than one month of summer visitation with S.T. and A.T., and during such visitation, Father's support was to abate. (A–55). On November 24, 1999, the court entered an order increasing Father's child support. (A–39, 46). Included in this order was a provision that "any time that [Father] shall have the minor children with him for seven (7) or more consecutive days, the support shall abate by one-half (1/2)." Appendix at 47. In its order on Father's petition to modify custody and child support, which is the subject of the present appeal, the trial court acknowledged this abatement provision, stating, "Part of that order [of November 1999] included an abatement of ½ of the support for any period of visitation of 7 days or more." Appendix at 39. In the next sentence, however, the trial court stated that it "ha[d] received no evidence to require an abatement calculation." *Id.* It is this conclusion that Father challenges.

At the hearing on Father's petition to modify custody and child support, Father testified regarding his summer visitation with his children, "[Mother] usually told me when I had to have them. I got them for a month in the summer." Transcript at 8. Father also testified that these visitations went well. Mother likewise testified that, prior to the filing of Father's current petition, that Father's visitations had gone well. Mother further testified that Father had visitation with the children "every other weekend, every other holiday and four weeks in the summer." Transcript at 41.

Thus, there was uncontradicted evidence before the trial court that Father had extended visitation with the children in the summer for a period of four weeks to one month. Yet the trial court concluded that it had received no evidence requiring an abatement. We conclude that Father has established prima facie error upon the part of the trial court for failure to abate his child support for the summer visitation to which both parties testified. We therefore reverse the trial court as to this issue and remand with instructions to calculate any

abatement that may be due to Father pursuant to the trial court's orders for any period of extended summer visitation.

The order of the trial court is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.

BAILEY, J., and MATHIAS, J., concur.